| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
|---|---|
| JACK CIPOLLA,<br><br>                            Plaintiff,<br><br>– against –<br><br>UNITED STATES OF AMERICA and<br>CAULDWELL-WINGATE, LLC,<br><br>                          Defendants. | **MEMORANDUM & ORDER**<br><br>12-cv-4026 (ERK) (JMA) |

KORMAN, J.:

Plaintiff Jack Cipolla commenced this action against the United States and Cauldwell-Wingate Company, LLC ("Cauldwell-Wingate") alleging negligence pursuant to the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346. The United States has filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and Rule 12(h)(3).

## BACKGROUND

Plaintiff formerly worked as a court security officer at the Thurgood Marshall Federal Courthouse at 40 Foley Square in Manhattan. Cipolla Dep. 11:4-22, May 5, 2014, ECF No. 30-1. Part of his duties in that position included roaming the perimeter of the courthouse on a daily basis. *Id.* at 12:10-17. On July 15, 2011 while walking with his supervisor along Pearl Street adjacent to the courthouse, plaintiff tripped and fell. *Id.* at 19:20-23, 20:11-15, 21:7-9. According to the incident report filed with plaintiff's employer, Cipolla tripped on a broken sidewalk at a "construction site" alongside the courthouse. Balaban Decl. Ex. B, ECF No. 25.

The renovation construction project on the Thurgood Marshall Courthouse occurred in two phases. The first phase involved interior demolition and exterior facade renovation. Kingher Dep. 25:14-16, May 12, 2014, ECF No. 30-2. The second phase, which was ongoing at

1

the time of plaintiff's accident, involved rebuilding the loading dock and replacing portions of the sidewalk surrounding the courthouse. *Id.* at 25:17-18. Cauldwell-Wingate acted as general contractor for both phases of the construction. *Id.* at 10:17-21. Work on the second phase of construction commenced when the United States issued a Notice to Proceed to Cauldwell-Wingate on April 30, 2009. Eng Decl. Ex. A, ECF No. 26. According to a contracting officer for the United States, control and supervision over the property usually passes to the general contractor when the Notice to Proceed is executed. Eng Aff. ¶ 5. Although work on the second phase of construction began in 2009, the replacement of the Pearl Street sidewalk did not take place until 2012. Klingher Dep. 54:16-19. At the time of the accident, however, Caulwell was storing certain construction materials on a portion of the sidewalk, separated by an orange barricade. *Id.* at 68:6-18; Cipolla Dep. 31:5-8; Levitz Decl. Ex. 4, ECF No. 30-4. The portion of the sidewalk on the other side of the barricade remained available for pedestrian traffic. *Id.*

The Thurgood Marshall construction project was undertaken per the terms of the contract between the United States and Cauldwell-Wingate. Eng Decl. ¶ 7. All work under the contract was to be "conducted under the general direction of the Contracting Officer and [was] subject to Government inspection and test at all places and at all reasonable times." Eng Decl. Ex. B (FAR 52.246-12 at pg. 24). Even so, the Government inspector's presence or absence did "not relieve [Cauldwell-Wingate] from any contract requirements." *Id.* Cauldwell-Wingate retained responsibility for "directly superintend[ing] the work" throughout the contract's performance. *Id.* (FAR 52.236.6 at pg. 15).

Among other duties, Cauldwell-Wingate was responsible for taking "proper safety and health precautions to protect the work, the workers, the public, and the property of others." *Id.* (FAR 52.236-7 at pg. 3). Another contract provision required Cauldwell-Wingate to maintain practices to "safeguard the public and Government personnel, property, material, supplies, and

equipment exposed to Contractor operations and activities." *Id.* (FAR 52.236-13 at pg. 17-18). Cauldwell-Wingate was also charged with obtaining necessary licenses and permits and for "all damages to persons or property that occur as a result of the Contractor's fault or negligence." *Id.* The contract further obligated Cauldwell-Wingate to maintain insurance throughout the entire performance of the contract. *Id.* (FAR 52.228-5 at pg. 11). Storage of materials on government property and the erection of temporary buildings, however, could only be undertaken with approval of the United States' contracting officer. *Id.* (FAR 52.236-10 at pg. 16-17).

There is no question that replacement of the Pearl Street sidewalk fell within Cauldwell-Wingate's duties as part of the contract. *See* Canty Decl. ¶ 10, Ex. E, ECF No. 29; Collegio Decl. ¶ 4, ECF No. 27. The declarations and depositions offer differing conclusions, however, as to who had responsibility for maintaining the sidewalk at the time of plaintiff's accident. Robert Collegio, the government's project manager, said that he would have notified Cauldwell-Wingate about a crack in the Pearl Street sidewalk if he had seen one in July 2011. Collegio Dep. 31:2-19., May 13, 2014, ECF No. 30-3. But Michael Klingher, Cauldwell-Wingate's senior project manager, said that he would have notified the government if he had seen a crack in the sidewalk. Klingher Dep. 47:15-48:4. According to Klingher, Cauldwell-Wingate only had responsibility for maintaining the sidewalk while they were performing replacement work; otherwise the government retained control. *Id.* at 141:10-21. Klingher testified on deposition that Cauldwell-Wingate placed the orange barricades on Pearl Street (suggesting Cauldwell-Wingate had control of the site), but that the barricades were placed there at the government's request (suggesting the government had retained authority). *Id.* at 59:5-60:21. He further said that he thought the government had responsibility for cleaning up Pearl Street because he saw Fedcap employees doing snow removal. *Id.* at 142:4-143:19. Klingher later testified that around

3

the time of the accident he saw Cauldwell-Wingate employees cleaning construction debris on Pearl Street on a daily basis. *Id.* at 180:13-181:7.

Plaintiff filed this lawsuit on August 13, 2012, asserting jurisdiction under the FTCA. Compl., ECF No. 1. Magistrate Judge Azrack ordered expedited discovery "on [the] issue of [the] government's liability." Minute Entry, April 1, 2014, ECF No. 17. Thus, a complete factual record on that issue stands before me on this motion to dismiss for lack of subject matter jurisdiction.

## DISCUSSION

### I. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction bears the burden of proving it by a preponderance of the evidence. *Id.*; Wright & Miller, Federal Practice and Procedure: Civil 3d § 1350. "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings . . . ." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002); *see also Makarova*, 201 F.3d at 113; Wright & Miller, Federal Practice and Procedure: Civil 3d § 1350.

### II. Merits

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherman*, 312 U.S. 584, 586 (1941). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that [his] claims fall within an applicable waiver." *Makarova*, 201 F.3d at 113. The FTCA provides a waiver of the United States' sovereign immunity for

> claims against the United States, for money damages . . . for injury
> or loss of property, or personal injury or death caused by the

> negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The FTCA defines government employees to include "officers or employees of any federal agency," but excludes "contractors" from this definition. 28 U.S.C. § 2671. Thus, to the extent that an independent contractor's negligent or wrongful act caused plaintiff's injuries, the United States cannot be held liable under the FTCA.

### A. Independent Contractor Status

"Whether a person is a government employee or an independent contractor is a question of federal law." *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990). The Supreme Court has written that the key factor for differentiating between government employees and independent contractors is the degree of control over the individual. *Logue v. United States*, 412 U.S. 521, 530 (1973). Courts "look to the terms of the contract to determine whether the Government controlled the detailed physical performance of the contractor or whether the Government supervised the day-to-day operations of the contractor." *Fraser*, 490 F. Supp. 2d 302, 310 (E.D.N.Y. 2007). That a government official acted generally as an overseer for a project does not establish the level of control needed to establish FTCA liability where day-to-day control remains in the hands of the contractor. *Leone*, 910 F.2d at 50.

There is no dispute here that, generally speaking, Cauldwell-Wingate acted as an independent contractor for the Thurgood Marshall Courthouse renovation project. The contract made Cauldwell-Wingate responsible for "directly superintend[ing] the work" throughout the performance of the contract. Eng Decl. Ex. B (FAR 52.236.6 at pg. 15); Canty Decl. ¶ 18 (conceding "the Government was not responsible for managing the day-to-day operations of Cauldwell on the construction site . . ."). Cauldwell-Wingate likewise had responsibility for

5

ensuring site safety and maintaining insurance throughout the project. *Id.* (FAR 52.236-13 at pg. 17-18, FAR 52.228-5 at pg. 11). That the government retained the right to oversee and inspect the project, *id.* (FAR 52.246-12 at pg. 24), does not negate Cauldwell-Wingate's independence on the project. *Leone*, 910 F.2d at 50. Indeed, courts in this circuit have regularly found that nearly identical contract provisions denoted an independent contractor. *See, e.g.*, *Fraser*, 490 F. Supp. 2d at 310; *Loew v. U.S. Postal Serv.*, No. 03-CV-5244 (ILG), 2007 WL 2782768, at *6 (E.D.N.Y. Feb. 9, 2007).

### B. Control of Pearl Street Sidewalk

The true dispute between the parties concerns who exercised control over the Pearl Street sidewalk at the time of plaintiff's accident. Plaintiff has conceded that the United States would be entitled to dismissal if Cauldwell-Wingate "was in exclusive control of the accident location." Levitz Decl. ¶ 10. The United States contends that Cauldwell-Wingate had control because it had been "explicitly charged" with maintaining the Pearl Street sidewalk and thus bore responsibility for the conditions there throughout the construction project. United States Reply Mem. in Supp. of Mot. to Dismiss 10, ECF No. 31. The plaintiff, who ultimately bears the burden of proof, submitted a declaration from counsel citing one portion of Klingher's deposition and argued only that there is "conflicting evidence as to who was responsible for the maintenance of the Pearl Street sidewalk at the time of the plaintiff's accident." Levitz Decl. ¶ 14. Cauldwell-Wingate also argues that a material issue of fact as to who controlled the sidewalk precludes the motion to dismiss. Cauldwell-Wingate Mem. in Opp'n of Mot. to Dismiss 3-4, ECF No, 28.

I am not persuaded. Contract interpretation is a mixed question of law and fact. *Antilles S.S. Co. v. Members of Am. Hull Ins. Syndicate*, 733 F.2d 195, 199 (2d Cir. 1984). Here, the facts are largely undisputed. Thus, the inquiry turns on whether, viewed in light of the contract between them, the facts set forth in the depositions and documents submitted by both sides

indicate the United States or Cauldwell-Wingate controlled the Pearl Street sidewalk in July 2011 when the plaintiff fell.

Specifically, replacement of the Pearl Street sidewalk plainly fell within the second phase of Cauldwell-Wingate's duties as part of the courthouse renovation contract. S*ee* Canty Decl. ¶ 10, Ex. E; Collegio Decl. ¶ 4. Cauldwell-Wingate received notice to proceed on that phase in April 2009, well before the plaintiff's accident. Eng Decl. Ex. A. According to the United States' contracting officer, notice to proceed meant that control and supervision of the property officially transferred to the contractor. Eng. Decl. ¶ 5; *Loew*, 2007 WL 2782768, at *6 (crediting a similar declaration that had not been challenged by the parties in the case). The contract further specified that Cauldwell-Wingate was responsible for taking "proper safety and health precautions to protect the work, the workers, the public, and the property of others," Eng. Decl. Ex. B (FAR 52.236-7 at pg. 3), and for "safeguard[ing] the public and Government personnel, property, materials, supplies and equipment exposed to Contractor operations and activities," *Id.* (FAR 52.236-13 at pg. 17). Moreover, Cauldwell-Wingate was storing construction materials on the sidewalk at the time of plaintiff's fall. Cipolla Dep. 46:3-25; Canty Decl. Ex. C. Under similar facts, a court in this district held that an independent contractor—and not the United States—had control, and thus responsibility, for an accident site. *Loew*, 2007 WL 2782768, at *6.

The primary piece of evidence highlighted by both plaintiff and Cauldwell-Wingate is the deposition testimony of Cauldwell-Wingate employee Michael Klingher that he saw Fedcap employees removing snow from the sidewalk throughout the construction process. Levitz Decl. ¶¶ 11-13; Cauldwell-Wingate Mem. in Opp'n of Mot. to Dismiss 4-5. The plaintiff appears to rest his entire argument on this single point. *See* Levitz Decl. But the evidence is of only limited help to plaintiff. Although Fedcap may have removed snow from the sidewalk during the winter, that does not speak to who had the responsibility for maintaining the sidewalk at the time of

7

plaintiff's accident in July 2011. Indeed, Klingher testified that he saw Cauldwell-Wingate employees cleaning the sidewalk daily around the time of the accident, albeit of construction debris. Klingher Dep. 180:13-181:7. Moreover, the Fedcap employees' actions are not enough to overcome the various facts and contractual provisions indicating Cauldwell-Wingate's control over the construction zone, including the sidewalk.

Cauldwell-Wingate, although a defendant in the case, argues additional points in its brief to aid plaintiff in establishing that the United States controlled the sidewalk. It argues that control is demonstrated by the placement of trailers in the area, the government's instructions as to where to store materials, and that the government requested barricades be set up to separate the construction materials from the remainder of the sidewalk. Cauldwell-Wingate Mem. in Opp'n of Mot. to Dismiss 4-5. None of these facts bear the weight that Cauldwell-Wingate attempts to place on them. Rather, these facts are "consistent with the Government's broad supervisory powers and its retention of the right to inspect." *Moschetto v. United States*, 961 F. Supp. 92, 96 (S.D.N.Y. 1997) (finding that government-maintained "construction shack" on site did not negate independent status of contractor).

In much of Cauldwell-Wingate's argument, there is the implication that while it would at some point assume control over the sidewalk, it had not done so at the time of plaintiff's fall. *See* Cauldwell-Wingate Mem. in Opp'n of Mot. to Dismiss 2 ("However, while the contract was executed in 2009, the sidewalk replacement did not occur until 2012, nearly one year after plaintiff's alleged incident."). This presents an artificially constrained interpretation of Cauldwell-Wingate's responsibilities. It defies logic to insist that Cauldwell-Wingate assumed control over the sidewalk only at the very moment it began replacement work on the sidewalk. Here, Cauldwell-Wingate had begun work on the phase of construction that included the sidewalk replacement and thus could be expected to exert its control over that sidewalk. *See*

8

*Roditis v. United States*, 122 F.3d 108, 110 (2d Cir. 1997) ("That the [sidewalk itself was] not under construction, or immediately surrounded by active construction work, is not dispositive. The span of a construction site is not limited to the precise area where the construction is taking place; it includes adjacent areas as well.").

Moreover, that Cauldwell-Wingate was using the bulk of the sidewalk where plaintiff fell as a staging area for its ongoing work indicates its control over the sidewalk. Assigning Cauldwell-Wingate control over only the portions of the sidewalk upon which construction materials were actually stored defies common sense. The contractual language and sidewalk conditions at the time of the plaintiff's accident indicate that Cauldwell-Wingate had control over the sidewalk where plaintiff fell.

## CONCLUSION

The complaint against the United States is dismissed for lack of subject matter jurisdiction. Because the federal claims have been dismissed, leaving no independent basis of jurisdiction over the claims against Cauldwell-Wingate, the claims against Cauldwell-Wingate are also dismissed without prejudice. 28 U.S.C. § 1367(c)(3); *Brotman v. United States*, 111 F. Supp. 2d 418, 427 (S.D.N.Y. 2000).

**SO ORDERED.**

Brooklyn, New York
December 12, 2014

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge